UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANDRE VANCE POWELL,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES BOWEN, CRISTINA STOBAUGH, MICHEAL OSBORNE, WILLIAM HUFFMAN, FOX, L. A. VAN NATTA, DIAZ, NASH, CHARLENE BURCKETT,<br><br>Defendants. | CAUSE NO. 3:20-CV-698-JD-MGG |

OPINION AND ORDER

Andre Vance Powell, a prisoner without a lawyer, filed an amended complaint. ECF 23. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In paragraph 1, Powell says someone at the Re-Entry Center promised he would be placed in the next welding class, but he does not say who. He says he was in the lowest classification level at the Re-Entry Center, but it is unclear what that means. He alleges he attempted to raise his classification level on August 9, 2018, by giving

Administrative Assistant Christina Stobaugh a written request to be placed in the next welding class. He says he had seen other residents interact with Stobaugh in a similar way, but it is unclear whether he means they were communicating with her in writing, asking to be placed in a class, attempting to raise their classification level, requesting the fulfillment of an oral promise, all of the above, or something else. He alleges Stobaugh rushed to Warden Charles Bowen and was "twisting it, which prompted Bowen's overreaction." ECF 23 at 3. Powell did not explain what he wrote in the request nor what Stobaugh told Bowen, so it is unclear how the written message was twisted. Powell describes the overreaction as "summoning Plaintiff to the main hallway, making contact with him, and threatening him." *Id*. Powell does not explain what contact occurred nor what threat was made.

Powell alleges these actions by Stobaugh and Bowen "showed discrimination in violation of the 14th Amend. to the U.S. Const." ECF 23 at 3.

> The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any persons within its jurisdiction the equal protection of laws. Traditionally, the Equal Protection Clause is understood as protecting members of vulnerable groups from unequal treatment attributable to the state. But it also proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called class-of-one.
> All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under like circumstances and conditions, people must be treated alike, unless there is a rational reason for treating them differently. Thus, a plaintiff states a class-of-one equal protection claim by alleging that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

*LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941–42 (7th Cir. 2010) (quotation marks, ellipsis, and citations omitted). "To be considered similarly situated, a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects. The similarly situated analysis is not a precise formula, but we have stated repeatedly that what is clear is that similarly situated individuals must be very similar indeed." *Id*. at 942. Here, Powell has not provided enough information to have plausibly alleged either Stobaugh or Bowen intentionally treated him differently from others similarly situated and that there was no rational basis for the difference in treatment when Stobaugh took his written request to her supervisor or when Bowen called him into the hallway.

In seven paragraphs, Powell alleges various grievances were not processed or handled properly. In paragraph 2, Powell alleges he filed grievances with the Indiana Department of Correction (IDOC) Regional Director Michael Osborne. He alleges "Osborne's inaction was a reflection of his participation in and deliberate indifference to the history of discrimination and the causally resulting retaliation." ECF 23 at 4. In paragraph 9, Powell alleges IDOC Grievance Manager L.A. Van Natta mishandled his grievance appeal. In paragraph 14, he alleges Stobaugh rejected a grievance on October 8, 2018, and the rejection subsequently upheld by Van Natta. In paragraph 15, he alleges Stobaugh rejected a grievance in early October 2018. In paragraph 16, he alleges Van Natta did not respond to a notarized letter. In paragraph 17, he mentions a grievance he filed about missing property. In paragraph 27, he alleges IDOC Ombudsman Charlene Burckett rejected a complaint he filed about IDOC policy violations. None of these

allegations state claims because "prison officials who reject prisoners' grievances do not become liable just because they fail to ensure adequate remedies." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017).

In three paragraphs, Powell alleges retaliation as the reason his work assignments were (or were not) changed. In paragraph 3, Powell says on August 14, 2018, Stobaugh and Bowen assigned him to a work detail he had been assigned to 90 days earlier. In paragraph 5, Powell alleges Bowen and Stobaugh retaliated against him on September 7, 2018, by not placing him in work release. In paragraph 6, Powell alleges Bowen and Stobaugh retaliated against him in mid-September by assigning him to work for the Department of Natural Resources (DNR). He alleges all of this was done in retaliation for his having filed a grievance against them on August 13, 2018.

"To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quotation marks omitted). As to the first prong of the test, "administrative appeals of prison discipline, like grievances against prison officials, fall within the First Amendment's protections." *Id*. at 674. As to the third prong of the test, "[i]n order for suspicious timing to . . . rais[e] an inference of causation, [the plaintiff] must show the adverse action follows close on the heels of protected expression and the person who decided to impose the adverse action knew of the protected conduct. Close on the heels is usually

4

no more than a few days. An inference of causation based on suspicious timing is inappropriate when there is a significant intervening event separating the protected activity and deprivation." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 586 (7th Cir. 2021) (quotation marks and citations omitted).

     Here, the facts alleged in paragraphs 3, 5, and 6 plausibly allege the elements required for the first and third prongs, but not the second. "We apply an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas,* 964 F.3d at 646 (quotation marks and citation omitted). "It is not enough that [Powell] felt slighted by the [job] placement. He needed to point to a deprivation with some significant deterrent effect in the prison context. We acknowledge that, for public employees, even relatively minor personnel actions can chill First Amendment activity. But prison work assignments are not the same as ordinary public employment." *Id.* at 647–48 (citations omitted). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse." *Id.* at 648 (quotation marks and citations omitted). Here, the amended complaint does not explain how the changes (or lack of change) in his job assignments created a significant deprivation which would have a deterrent effect in the prison context on an inmate of ordinary firmness.

     In paragraph 4, Powell alleges he signed an agreement related to his grievance because Stobaugh made him a promise she ultimately did not fulfill. It is unclear what he signed, how it related to his grievance, what promise was made, and how it was

unfulfilled. These vague allegations do not plausibly state a claim. Powell alleges Stobaugh violated prison policy by resolving his grievance, but 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws, regulations, policies, or prison rules. *Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 699 (7th Cir. 2020). "Essential to any section 1983 action is proof that a defendant violated a plaintiff's federal rights. The statute does not provide a remedy for abuses that do not violate federal law nor does it create substantive rights. *Jones v. Cummings*, 998 F.3d 782, 788 (7th Cir. 2021).

In paragraph 6, Powell alleges Bowen and Stobaugh denied him due process in mid-September when they assigned him to work for the DNR. However, a prisoner does not have a liberty or property interest in a prison job, and thus deprivation of that job does not violate his procedural due process rights. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). Neither is there a liberty or due process interest in being assigned to a job.

In paragraphs 6 and 7, Powell alleges Bowen retaliated against him in mid-September for the August 13, 2018, grievance by promising he would be "disciplinary-immune from 'any misunderstanding related to' DNR . . .." ECF 23 at 6. This allegation does not state a claim because an inmate of ordinary firmness would not be dissuaded from filing a grievance because he was told he was immune from discipline.

In paragraph 8, Powell alleges on September 21, 2018, Bowen and Stobaugh ordered Case Worker William Huffman to write a false conduct report accusing Powell of not reporting to his DNR job. In paragraphs 18 through 26, Powell alleges Screening

6

Officer Diaz and Hearing Officer Nash denied him evidence to demonstrate he was not guilty of failing to report to work at the DNR. However, Powell was found guilty and sanctioned with the "loss of 90 days earned credit time" for not reporting to work at the DNR. ECF 23 at 18. Because he lost earned credit time, Powell cannot proceed with these claims until after the prison disciplinary proceeding is otherwise overturned or set aside because finding that the conduct report was false and that he was denied exculpatory evidence would undermine the prison disciplinary finding that he was guilty. *See Edwards v. Balisok*, 520 U.S. 641, 643 (1997).

In paragraph 10, Powell alleges Bowen and Stobaugh retaliated against him on September 24, 2018, by ordering his transfer out of the South Bend Community Re-Entry Center because he filed a grievance on August 13, 2018, and two more on September 20, 2018. In paragraph 11, he alleges they retaliated by accusing him of theft to justify the transfer. In paragraph 13, he alleges they retaliated against him by transferring him out of the South Bend Community Re-Entry Center knowing he would be sent to the Westville Correctional Facility which had various "extremely harmful conditions." ECF 23 at 10. The retaliatory transfer claim in paragraph 10 states a claim because an inmate of ordinary firmness could be deterred from filing a grievance by being transferred out of a community re-entry center and into a State prison. The allegations in paragraphs 11 and 13 do not independently state claims. Rather, they are merely an extension of the retaliatory transfer claim in paragraph 10. Nevertheless, if Powell has evidence Bowen and Stobaugh knew the theft accusations were false, that

7

might be relevant later in the course of this litigation if those allegations are presented as a legitimate reason for the transfer.

Powell also alleges in paragraph 10 that the transfer violated his right to equal protection. However, including such a claim with his retaliation claim would be redundant. *Cf. Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017) (affirming dismissal of Eighth Amendment claim because the same facts comprised a more applicable First Amendment claim); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing additional claims based on same circumstances because the claim "gains nothing by attracting additional constitutional labels"); and *Graham v. Connor*, 490 U.S. 386, 395 (1989) (analyzing allegations under the most "explicit textual source of constitutional protection"). Powell alleges he was transferred in retaliation for filing a grievance. Thus, to prove his equal protection claim, he would need to show that other inmates who filed grievances were not transferred in retaliation. As such, the equal protection claim is merely a more complicated method of proving the same allegation.

Powell also alleges in paragraph 11 that the false accusations of theft constituted "defamation and/or slander . . .." ECF 23 at 9. However, an "interest in reputation . . . is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Paul v. Davis*, 424 U.S. 693, 712 (1976).

In paragraph 12, Powell alleges Bowen and Stobaugh retaliated against him by ordering Correctional Officer Fox to steal his property by falsifying the inventory sheet before Powell was transferred. Powell alleges he lost all his food and bottles of lotion. These allegations state a claim against Bowen and Stobaugh, but not Fox. There is no

8

allegation Fox knew about the grievances or that he did anything other than steal Powell's property. Though the Fourteenth Amendment provides State officials shall not "deprive any person of life, liberty, or property, without due process of law," a State tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 et seq.) and other laws provide for state judicial review of property losses caused by government employees. Those State laws provide an adequate post deprivation remedy to redress State officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

For these reasons, the court:

(1) GRANTS Andre Vance Powell leave to proceed against Charles Bowen and Cristina Stobaugh in their individual capacities for nominal and punitive damages for retaliating against him on September 24, 2018, by ordering his transfer out of the South Bend Community Re-Entry Center because he filed a grievance on August 13, 2018, and two more on September 20, 2018, in violation of the First Amendment;

(2) GRANTS Andre Vance Powell leave to proceed against Charles Bowen and Cristina Stobaugh in their individual capacities for nominal and punitive damages for

9

retaliating against him on September 24, 2018, by ordering Correctional Officer Fox to falsify the inventory sheet to steal his food and bottles of lotion because he filed a grievance on August 13, 2018, and two more on September 20, 2018, in violation of the First Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Micheal Osborne, William Huffman, Fox, L.A. Van Natta, Diaz, Nash, and Charlene Burckett;

(5) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Charles Bowen and Cristina Stobaugh at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 23), under 28 U.S.C. § 1915(d);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Charles Bowen and Cristina Stobaugh to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 20, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT